**IT IS ORDERED as set forth below:**

**Date: August 21, 2020**

_____

**Jeffery W. Cavender**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 17-67571-JWC |
| PAMELA DAWN MANIGAULT, | CHAPTER 7 |
| Debtor. | |
| PAMELA DAWN MANIGAULT, | |
| Plaintiff, | ADVERSARY PROCEEDING NO. |
| v. | 18-5189-JWC |
| THE U.S. DEP'T OF EDUCATION, | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the Motion for Summary Judgment (Doc. No. 31)

(the "Motion") filed by the United States Department of Education ("Defendant"). This is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and the Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

Pamela Dawn Manigault ("Plaintiff") initiated this adversary proceeding seeking a determination that her educational loan debt is dischargeable pursuant to 11 U.S.C. § 523(a)(8)(B). On October 6, 2017, Plaintiff filed a petition for relief under chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code"),[1] and shortly after filing, her case converted from chapter 13 to chapter 7. Plaintiff received a discharge in her chapter 7 case on February 13, 2018. Thereafter, Plaintiff filed a complaint to determine the dischargeability of her educational loan debt pursuant to § 523(a)(8)(B). Defendant timely answered the complaint and filed the present Motion after fact discovery closed. Plaintiff filed her Response to Summary Judgment (the "Response") (Doc. No. 34), and Defendant thereafter filed its Reply in Support of Motion for Summary Judgment (the "Reply") (Doc. No. 39). After fully considering the Motion, the Response, the Reply, and all supporting materials submitted by the parties, the Court finds that genuine issues of material fact exist precluding summary judgment and, therefore, the Motion will be denied for the reasons set forth below.

I.     **FACTS**[2]

Plaintiff obtained student loans in connection with her attendance at Georgia Southern University from 1992 to 1998, her attendance at Lincoln Memorial University from 2003 to 2004, and her attendance at Nova Southeastern University from 2004 to 2013. During that time, Plaintiff earned a bachelor's degree in sociology, a master's degree in counselor education, a post-graduate degree as an education specialist, and completed 95% of a doctorate degree in education. To pay

---

[1] All statutory references herein are to the Bankruptcy Code unless otherwise noted.
[2] Local bankruptcy rule 7056-1 provides that "all material facts contained in the moving party's statement that are not specifically controverted in respondent's statement shall be deemed admitted." BLR 7056-1. The facts set forth herein are deemed admitted by the parties pursuant to the local rule unless otherwise indicated.

1

for tuition while pursuing each degree, Plaintiff obtained federally funded or guaranteed student loans for each semester or quarter of study.

Following completion of her master's degree, Plaintiff worked as a school counselor in DeKalb County from 1998 to 2004. During those years, Plaintiff worked at Claxton Middle School for approximately two years, Oglethorpe Point Elementary for approximately two years, and then Stephenson Sixth Grade Academy until 2004. Starting in 2004, Plaintiff worked full-time as a school counselor for several schools in the Newton County School District. Due to budget cuts, Plaintiff lost her position in the spring of 2015. At that time, Plaintiff's gross income was $60,000 per year. From July 2015 to October 2015, Plaintiff worked full-time for Lamar County Schools. Then from January 2016 to June 2017, Plaintiff worked full-time as a GEAR UP Graduation Coach for the Bibb County School District. Her annual salary was $68,000. Plaintiff's employment with Bibb County terminated due to lack of funding.

From October to November 2017, Plaintiff held a temporary job with the Cobb County School District where she made $1,100 in total. After that, Plaintiff worked for the Cherokee County School District from March to December 2018 as a paraprofessional. Her annual salary was $18,000. Plaintiff took a part-time job as a school counselor for Atlanta Public Schools in December 2018, where she remains employed. Plaintiff works 20 hours per week with a current annual salary of $23,000. Plaintiff continues to seek full-time employment.

Plaintiff is over 47 years old and has a daughter approximately 13 years old. Together, they reside in a single room that Plaintiff rents for $500 a month. Prior to renting the room, Plaintiff and her daughter resided at a homeless shelter for women and children from February 2018 to June 2019.

2

In combination with Plaintiff's employment struggles, Plaintiff suffers from a number of health issues. Diagnosed with hypothyroidism at 14, Plaintiff experiences ongoing issues with asthma and started suffering from bronchoconstriction around 2009. Additionally, Plaintiff was diagnosed with fibromyalgia in 2012, osteoarthritis in 2016, and depression in April 2019. Despite her ailments, Plaintiff has never lost a job due to her medical conditions. She has neither voluntarily stopped working nor declined a job opportunity due to her medical conditions.

The parties dispute a number of facts surrounding Plaintiff's payment history, but they do agree on the following facts. Plaintiff executed a *Federal Direct Consolidation Loan Application and Promissory Note* on November 15, 2012. Additionally, Plaintiff executed a *Federal Direct PLUS Loan Master Promissory Note* on November 19, 2014. In 2015, Plaintiff applied and qualified for an Income-Based Repayment ("IBR") plan. Beginning on February 16, 2016 and ending January 17, 2017, Plaintiff was approved for a monthly repayment amount of $0.00 based on her adjusted gross income and household size.

## II.    SUMMARY JUDGMENT STANDARD

In accordance with Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, a court will grant summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c), Fed. R. Bankr. P. 7056. The moving party bears the burden of establishing the right to summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1372 (11th Cir. 1982). Once the moving party makes a prima facie showing of its right to judgment as a matter of law, the nonmoving party must go beyond the pleadings and demonstrate that a material issue of fact exists precluding summary judgment. *Celotex Corp. v. Catrett*, 477

3

U.S. 317, 324 (1986). Where the facts are not disputed, the Court must determine whether the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Defendant filed the Motion seeking summary judgment and a determination that the student loan debt owed by Plaintiff is not subject to discharge under § 523(a)(8). Under that section a debtor must prove that "excepting such debt from discharge... would impose undue hardship on the debtor and the debtor's dependents….". 11 U.S.C. § 523(a)(8). To establish "undue hardship," the Eleventh Circuit follows the *Brunner* test, which requires the debtor prove:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Hemar Ins. Corp. v. Cox (In re Cox),* 338 F.3d 1238, 1241 (11th Cir.2003) (quoting *Brunner v. New York State Higher Educ. Servs. Corp.,* 831 F.2d 395, 396 (2d Cir.1987)).

A debtor bears the burden of establishing each element of the *Brunner* test by a preponderance of the evidence. Absent a showing as to each element, a debtor is not entitled to discharge her educational loan debt. *Brunner*, 831 F.2d at 396; *Educ. Credit Mgmt. Corp. v. Acosta-Conniff (In re Acosta-Conniff)*, 686 F. App'x. 647, 648–49 (11th Cir. 2017); *In re Rifino*, 245 F.3d 1083, 1087–88 (9th Cir. 2001).

### III. ANALYSIS

In its Motion, Defendant asserts that Plaintiff cannot satisfy the second and third prongs of the *Brunner* test. For purposes of the Motion, Defendant does not address or contest Plaintiff's

4

ability to satisfy the first prong.[3] Accordingly, the Court limits its inquiry to the second and third prongs of the *Brunner* test.

> A. *Second Prong: Whether additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans.*

The second prong of *Brunner* requires the debtor to demonstrate that additional circumstances exist which show the debtor's current inability to maintain a minimal standard of living is likely to continue for a significant portion of the repayment period of the student loans. Defendant argues that Plaintiff cannot show that her current state of affairs is likely to persist. While it concedes that Plaintiff's current situation prevents her from making payments and maintaining a minimal standard of living, Defendant maintains that Plaintiff cannot demonstrate that her inability to pay will continue. Defendant argues that Plaintiff is likely to improve her circumstances for two reasons. First, Defendant argues that Plaintiff previously earned a full-time salary between $60,000 and $68,000. If she could find full-time employment again, Defendant argues, she likely could afford her student loan payments. Second, Defendant claims that Plaintiff's admissions regarding her medical conditions—that she never lost a job or decided against applying for a job due to her conditions—defeat any notion that her conditions could hinder Plaintiff's future employment prospects. Defendant argues that these admissions disprove Plaintiff's only basis for establishing persistent undue hardship.

Plaintiff, on the other hand, contends that she can establish that her current state of affairs is likely to continue. Plaintiff states that she has applied to over one hundred (100) jobs, part-time and full-time, for a number of roles related to her field throughout Georgia without success. Additionally, Plaintiff argues that although her medical conditions have not prevented her from

---

[3] Although Defendant makes no argument in the Motion concerning Plaintiff's satisfaction of the first prong of *Brunner*, Defendant makes clear in the Motion that it does not waive the issue for trial.

5

working, they limit her ability to work. As a school counselor, Plaintiff states that her conditions limit her ability to stand and walk during work hours. According to Plaintiff, these limitations prevent her from working more than 20 hours a week.

Under the second prong of *Brunner*, the Court must consider the "additional circumstances" of the debtor and determine whether those circumstances are likely to persist into the future. First, the Court must analyze whether the debtor's "additional circumstances" constitute "undue hardship." If the Court concludes that the debtor is experiencing "undue hardship," then the Court must project whether the "undue hardship" will persist for a "significant portion of the repayment period of the student loans." *In re Macon*, 2014 WL 5080410, at *3. Although *Brunner* does not lay out what "additional circumstances" the Court should consider under the second prong, other courts consider a number of factors, including whether the debtor suffers from a disability; obligations to care for dependents; the quality and degree of education; nature of job skills; underemployment; number of years remaining in work life to repay the loan; age and ability to relocate; lack of assets which could be used to pay the loan; probability of increasing expenses; and whether better financial options exist elsewhere. *In re Macon*, No. 12-42846-PWB, 2014 WL 5080410 (Bankr. N.D. Ga. Oct. 6, 2014) (citing *Educational Credit Mgmt. Corp. v. Nys (In re Nys)*, 308 B.R. 436, 446 (9th Cir. B.A.P. 2004), *aff'd* 446 F.3d 938 (9th Cir. 2006)). The Eleventh Circuit requires the debtor to demonstrate a persistent undue hardship such that there is a "certainty of hopelessness" that the debtor will ever be able to repay the loans within the repayment period. *Educational Credit Mgmt. Corp. v. Mosley (In re Mosley)*, 494 F.3d 1320, 1326 (11th Cir. 2007). The aim of the second prong of the *Brunner* test is the bifurcation of student loan borrowers into the average bankruptcy debtor and the debtor who is experiencing ongoing financial hardship. The Eleventh Circuit cited to the Ninth Circuit decision, *In re Nys*, for its

6

analysis distinguishing between the "garden-variety debtor" and the debtor who is experiencing persistent "undue hardship." *In re Mosley*, 494 F.3d 1320, 1327 (citing *In re Nys*, 446 F.3d 938). In *Nys*, the court differentiates debtors experiencing "undue hardship" from "garden-variety debtors" by discerning the realistic possibility that a debtor could improve her financial situation in the future. *In re Nys*, 446 F.3d 938, 944.

Based upon the foregoing, the Court finds that genuine issues of material fact remain to be determined at trial for at least two reasons. First, the Court is not convinced Plaintiff will be unable to establish persistent "undue hardship" at trial. Defendant wrongly couches its argument based on Plaintiff's past. The core of Defendant's argument relies on Plaintiff's previous income and Plaintiff's admission that her medical conditions have not prevented her employment or dissuaded her from applying for employment. However, the Eleventh Circuit made clear that the focus of the analysis under the second prong of *Brunner* is geared towards the debtor's future financial prospects. *In re Mosley*, 494 F.3d 1320, 1326-27. Also, the analysis is not whether the debtor can obtain employment, but rather whether "debtor's inability to make the loan payments within the repayment period is persistent." *In re Hill*, 598 B.R. 907, 919 (Bankr. N.D. Ga. 2019) (citing *In re Adams*, Adv. Proc. No. 15-05413-WLH, 2016 WL 8943802, at *5 (Bankr. N.D. Ga. Nov. 18, 2016)). Defendant concedes that Plaintiff has not achieved her previous income of $60,000 since 2017. Plaintiff is currently 47 years old. She has a daughter who is approximately 13 years old. Plaintiff lives in a one-room apartment with her daughter, having previously lived in a homeless shelter for over a year. She works part-time, about 20 hours per week, which she claims is a physical struggle due to her medical conditions. Though Plaintiff's conditions may not have hindered or prevented her employment in the past, she asserts that her conditions currently limit her ability to work. It is also noteworthy that the litany of medical conditions that Plaintiff suffers from may not be likely

7

to improve as she gets older. On top of Plaintiff's health issues, she states that she applied to approximately one hundred (100) jobs across Georgia in her respective field without success. Even Defendant concedes the expansiveness of Plaintiff's job search, spanning at least nine (9) counties in Georgia. Based on these facts, the Court is not convinced Plaintiff will be unable to prove undue hardship that is likely to persist into the future. Contrary to Defendant's position, the Court does not find Plaintiff's attempts to better her situation as dispositive evidence that such efforts will bear fruit in the future. In sum, the Court finds that genuine issues of material fact remain as to whether Plaintiff can establish persistent undue hardship.

Furthermore, Defendant failed to delineate any repayment period for the Court to consider, which is a critical piece of the puzzle in analyzing the second prong of the *Brunner* test. *In re Macon*, 2014 WL 5080410, at *3. Although Defendant claims the total amount of student loan debt owed by Plaintiff is $258,948.13 as of September 7, 2018, Defendant has not proffered a proposed repayment period or a potential monthly payment. Based on the *Federal Direct Consolidation Loan Application and Promissory Note* attached as Exhibit B to Defendant's Statement of Material, Undisputed Facts, the maximum repayment period for a debt exceeding $60,000 is 30 years under a Standard or Graduated Repayment Plan (Doc. No. 31, Part 2). Based on the information provided, the Court cannot determine the length of the repayment period or any required monthly payment amount. Without that information, the Court cannot determine whether Plaintiff's circumstances are likely to persist for a significant portion of the repayment period. *In re Macon*, at *3. As a result, material issues of fact remain to be tried under the second prong of the *Brunner* test which preclude summary judgment on that issue.

8

*B. Third Prong: Whether the debtor has made good faith efforts to repay the loans.*

The third prong of the *Brunner* test requires a debtor to show good faith efforts to repay her student loans. Defendant argues that Plaintiff cannot satisfy the third prong based on her repayment history. Defendant claims that Plaintiff's payments total $3,357.86 over the entire history of her student loans, which is a little more than 1% of the purported total outstanding debt. Furthermore, Defendant contends that Plaintiff had the means to make payments when she was employed as a GEAR UP Coach from January 2016 to June 2017 making $68,000 a year, yet she made no payments. Although Plaintiff qualified for an IBR plan from February 2016 to January 2017, she made no payments after the plan expired and while she was still employed as a GEAR UP Coach. Defendant asserts that Plaintiff only participated in the IBR plan for one year and failed to give flexible repayment a meaningful chance. Lastly, Defendant contends that only four (4) years elapsed between the time Plaintiff started repaying her student loans and the time she filed for bankruptcy. These cumulative facts, Defendant argues, establish as a matter of law Plaintiff's inability to satisfy the good faith efforts to repay the loans under *Brunner*.

Whether a debtor has made good faith efforts to repay a student loan is a factual determination. A debtor's "failure to make a payment, standing alone, does not establish a lack of good faith." *In re Mosley*, 494 F.3d 1320, 1327 (citing *Educational Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302 (10th Cir. 2004)). In the context of a good faith determination, courts consider facts such as "the debtor's effort to obtain and maintain employment, her household budget, and her loan payment history." *In re Macon*, No. 12-42846-PWB, 2014 WL 5080410, at *3. The Court also considers whether the debtor's default is the result of factors beyond her control rather than the debtor's choices. *Mosley*, 494 F.3d 1320, 1327.

9

From its review of the record, the Court concludes that genuine issues of material fact persist that preclude entry of summary judgment on the issue of the Plaintiff's good faith. Defendant's argument primarily relies on Plaintiff's payment history. As courts have noted, however, a debtor's payment history is important, but it is not the sole factor in determining good faith. *In re Kidd*, 472 B.R. 857, 862 (Bankr. N.D. Ga. 2012); *In re Mosley*, 494 F.3d 1320, 1327. Defendant also cites to Plaintiff's student-loan-to-unsecured-debt ratio and the amount of time elapsed between the start of loan repayment and commencement of bankruptcy as indications of bad faith. However, the Court does not believe these considerations preclude Plaintiff as a matter of law from the opportunity of proving her case at trial.

Defendant cites to *In re Kidd* for the proposition that a debtor's ratio of student loan debt to unsecured debt may be indicative of bad faith. 472 B.R. 857, 863. In *Kidd*, the court granted summary judgment in favor of the lender where the debtor made no payments on the student loans, failed to actively seek employment for a number of years, engaged in excessive discretionary spending, failed to seek out repayment options other than litigation, and had a student-loan-to-unsecured-debt ratio of approximately 70%. 472 B.R. 857, 864. While the debt ratio may be informative, the fact that a debtor's student loan balance makes up a disproportionate amount of the total debt is not determinative. *In re Hill*, 598 B.R. 907, 921. Here, Plaintiff's situation is clearly distinct from the debtor in *Kidd*. Unlike in *Kidd,* Defendant does not contend that Plaintiff made *no* payments on the loans, that Plaintiff is not actively seeking employment, or that Plaintiff is not minimizing her expenses. Moreover, the Court is precluded from calculating the actual debt ratio because the total amount of student loan debt is contested by the parties.

Defendant also points to the limited period of time between the initial repayment date and the date of the bankruptcy filing as evidence of bad faith, citing *Brunner* and *In re Marlow*. In

10

*Brunner*, the court held that filing for bankruptcy barely a month into the repayment period and only ten months after graduating from school did not evidence a good faith attempt to repay the student loans. 831 F.2d 395, 397. Likewise, the court in *In re Marlow* found that the debtor failed to show a good faith effort to repay his student loans after making almost no payments on his student loans and filing for bankruptcy just a year after graduating. No. 3:13-24, 2013 WL 3515726, at *5 (E.D. Tenn. July 11, 2013). Again, both *Brunner* and *Marlow* are easily distinguishable from the present case. Unlike the debtors in *Brunner* and *Marlow*, Plaintiff utilized a flexible repayment plan, the IBR plan, and entered into both a school and hardship deferment. Plaintiff also made payments for over a full year and did not file for bankruptcy until over four years after her doctoral studies concluded. These distinctions are not insignificant.

Defendant also fails to address any other factors that the Court may rely on in making its determination. Looking at Plaintiff's situation as a whole—her employment history, her utilization of the IBR Plan as well as school and hardship deferments, her continuing efforts to seek and retain employment during the entire repayment period, her living in a homeless shelter and then a one-room apartment with her daughter—the Court finds genuine issues of material fact remain to be determined with respect to whether Plaintiff made a good faith effort to repay her student loan debt. Summary judgment is thus inappropriate on this issue as well.

### IV.   CONCLUSION

The Court finds that genuine issues of material fact remain as to Plaintiff's ability to satisfy the second and third prongs of the *Brunner* test. More specifically, based on the record before it, the Court is not convinced that Plaintiff will be unable to establish at trial that Plaintiff's current state of affairs is likely to persist or that Plaintiff made a good faith effort to repay her student loans. The Court is similarly not convinced that Plaintiff ultimately will be able to carry her burden

of proof on these issues at trial, but entry of summary judgment precluding her the opportunity to have her day in court is not warranted based on the record before the Court. Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment be, and is hereby, **DENIED.**

The Clerk's Office shall serve a copy of this Order on Plaintiff, Plaintiff's counsel, Defendant, the Chapter 7 Trustee, and the United States Trustee.

**END OF DOCUMENT**